```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
CHRISTOPHER B. WOLF,

                        Plaintiff,           07-CV-582

             v.                              DECISION
                                             and ORDER
MICHAEL ASTRUE,
Commissioner of Social Security

                        Defendant.
_____
```

## INTRODUCTION

Plaintiff, Christopher B. Wolf ("Plaintiff"), brings this action pursuant to the Social Security Act § 216 (i) and § 223, seeking review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Plaintiff specifically alleges that the decision of the Administrative Law Judge ("ALJ"), Nancy Lee Gregg, denying his application for benefits was against the weight of substantial evidence in the record and contrary to applicable legal standards.

The Commissioner moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12 (c) ("Rule 12 (c)"), on the grounds that the ALJ's decision was supported by substantial evidence. Plaintiff opposes the Commissioner's motion, and cross-moves for judgment on the pleadings, on the grounds that the Commissioner's decision was erroneous. The Court finds that the decision of the Commissioner,

Page 1

for the reasons set forth below, is supported by substantial evidence, and is in accordance with applicable law. Therefore, the Commissioner's motion for judgment on the pleadings is hereby granted, and the Plaintiff's motion is denied.

## **BACKGROUND**

On March 25, 2002, Plaintiff filed an application for DIB under title II, § 216 (i) and § 223 of the Social Security Act, alleging a disability since March 5, 2001 claiming an inflamation of the lumbar disc and compression of the sciatic nerve. (Transcript of Administrative Proceedings ("T") at page 65).  At the time of the application, Plaintiff was 33 years old, had a high school education, and had worked previously as a security guard, gate guard, knife grinder, church cleaner, maintenance worker, and an armored car guard (T. at 20-21, 66, 78-79A, 104-104A, 339-344).

Plaintiff's application for DIB was initially denied by the Social Security Administration on May 7, 2002.  The Plaintiff filed a timely request for a hearing on June 21, 2002 and he appeared, with counsel, and testified at the hearing held on January 5, 2004 before ALJ, Nancy Lee Gregg.  The ALJ determined that the Plaintiff was not disabled withing the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner when the Social Security Appeals Council denied Plaintiff's request for review on July 3, 2007.  Plaintiff then filed this action on September 6, 2007.

**DISCUSSION**

I. **Jurisdiction and Scope of Review**

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. V. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See Monger v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983)(finding that a reviewing Court does not try a benefits case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating Plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation ommitted). The Commissioner asserts that his decision was reasonable and is supported by substantial evidence in the record, and therefore moves for judgment on the pleadings pursuant to Rule 12(c). Judgment on the pleadings may be granted under Rule 12(c)

where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief, judgment on the pleadings may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

**II.   The Commissioner's decision to deny the Plaintiff benefits is supported by substantial evidence in the record.**

The ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (T. at 14). In doing so, the ALJ adhered to the Social Security Administration's 5-step sequential evaluation analysis for evaluating appointments for disability benefits. (T. at 15-22); 20 C.F.R. § 404.1520. The 5-step analysis includes the following inquiries: (1) if the claimant is performing substantial gainful activity, he is not disabled; (2) if the claimant is not performing substantial gainful work, his impairments must be "severe" before he can be found to be disabled; (3) if the claimant is not performing substantial gainful activity, and has a "severe" impairment(s) that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment(s) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry; (4) if not, the next inquiry is whether, considering the claimant's residual functional

capacity, the claimant's impairment(s) prevents him from doing past relevant work; (5) if the claimant cannot perform past relevant work, but he can perform other work existing in substantial numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920 (a)(4)(i)-(v).

Under step 1 of the process, the ALJ found that the Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision. (T. at 23). The ALJ next found that the Plaintiff suffered from the following severe impairments: "initially myofascial pain syndrome from a musculoligamentous strain, which developed into a slight disc bulge at L5-S1, mild foramina stenosis (right greater than left), and significant disc space narrowing at L5-S1 by October 2002 and a midline disc herniation at L5-S1 by December 26, 2002, and he now has residuals status post anterior retro peritoneal diskectomy with disc spacer at L5-S1 on May 6, 2003." (T. at 23). At step 3, the ALJ found that the Plaintiff's impairments did not meet or medically equal the listed impairments in Appendix 1, Subpart P. (T. at 23). Further, the ALJ found that the Plaintiff has the residual functional capacity to perform a full range of sedentary work that did not involve "repetitive stooping (bending) and repetitive twisting at the waist," but he was unable to perform any past relevant work. (T. at 23-24). Finally, the ALJ determined that, considering Plaintiff's age, education, past relevant work experience, he was able to perform sedentary work and he was not

disabled withing the meaning of the Social Security Act. (T. at 23-24).

Based on a the entire record, including the medical evidence in the record, I find that the ALJ properly concluded that the Plaintiff was not disabled within the meaning of the Social Security Act.

### A. The ALJ's decision is supported by the substantial evidence in the record.

The Plaintiff has not contested the decision of the ALJ that he was not disabled through September 30, 2002. (Plaintiff's Brief, at 5). However, the Plaintiff has argued that their was not substantial evidence in the record to support the ALJ's finding of disability after October, 1 2002. (Plaintiff's Brief at 5-7). Notwithstanding Plaintiff's contention that the ALJ did not adequately consider the worsening of his condition, this court finds that there is substantial evidence in the record to show that the Plaintiff was not disabled within the meaning of the Social Security Act for the entire period at issue.

The Plaintiff's impairments are the result of an injury he sustained after falling on ice at work on March 5, 2001. (T. at 162). Following the accident, the Plaintiff was treated and released from Kenmore Mercy Hospital after x-rays revealed no significant abnormalities. (T. at 162-166). The attending physician prescribed Motrin and advised him to follow up with his primary care physician. (T. at 164).

On March 7, 2001, Plaintiff saw his primary care physician, Dr. Dominic Cimato, who diagnosed him with an acute lumbosacral sprain with radiculpathy and prescribed Motrin, Darvocet, and heat application. (T. at 192). Dr. Cimato also referred him to physical therapist, Dr. Lawrence Birzon. (T. at 192). Throughout the relevant period, Plaintiff saw Dr. Birzon who reported, on occasion, that there was no "gross change" in the Plaintiff's condition as he continued physical therapy. (See eq., T. at 226, 228 232).

Prior to October 1, 2002, Plaintiff continued to see Dr. Cimato, and continued to experience pain, while showing some improvement with medication. (T. at 187-189). He was referred to Dr. Pratibha Bansal, a pain management specialist who authorized epidural steroid injections and recommended stretching. (T. at 173-174). He was also referred to neurosurgeon, Dr. Douglas Moreland, to assess the possibility of surgery. (T. at 171). Dr. Moreland diagnosed him with myofascial pain and recommended that he start walking without a cane and increase his activities. (T. at 172). Dr. Moreland also reported that a CT scan, an X-Ray, and an MRI were "essentially normal no evidence of disc herniation or neural compression" with a slight bulge at the L5-S1 level on the CT. (T. at 168-172). He did not recommend surgery. (T. at 169).

During this period, Plaintiff also saw Dr. N. Rehmatullah, who diagnosed radiculopathy and recommended pain management and continued physical therapy. (T. at 207-208). He noted that Plaintiff had a "marked partial disability" and could only perform work with limited standing and walking. (T. at 208).

Plaintiff then underwent another neurosurgery consultation with Dr. Gregory Castiglia, who reviewed an MRI which showed mild disc space collapse at L5-S1 with no evidence of nerve root compromise, foramina stenosis, or spondylolisthesis. (T. at 331). Dr. Castiglia recommended continuation of physical therapy, hydrotherapy, and prescribed Neutrontin. Id. He also recommended that the Plaintiff consider job retraining in order to return to the workforce. (T. at 332).

Dr. Cimato then reported improved movement and strength and recommended that he follow up with Dr. Castiglia and Dr. Bansal, continue physical therapy, and obtain a second opinion regarding his potential for surgical intervention. (T. at 302). The Plaintiff was evaluated on September 26, 2002 by Dr. Andrew Cappuccino, an orthopaedic surgeon. (T. at 268). Dr. Cappuccino opined that he was temporarily and totally disabled, and ordered an MRI of the lower lumbar spine. (T. at 269-70).

The Plaintiff contends that his condition worsened and the determination that he was not disabled after October 1, 2002 was erroneous. (Plaintiff's Brief at 5-6). However, the medical evidence in the record dated after October 1, 2002, is consistent with the medical evidence prior to this date.

On December 18, 2002, Dr. Cappuccino recommended that the Plaintiff undergo an anterior retroperitoneal diskectomy and interbody stabilization after an MRI revealed disc disruption at L5-S1 and mid line herniation. (T. at 266). A second orthopaedic surgeon, Dr. John Ring, evaluated Plaintiff on February 11, 2003,

and also recommended surgery. (T. at 252-253). Plaintiff underwent surgery on May 6, 2003. (T. at 303).

Two weeks after surgery, Dr. Cappuccino reported that the Plaintiff continued to experience pain, but that there was no change in position of the interbody device, and "no gross evidence of loss of fixation." (T. at 262). He prescribed Zanaflex, ordered a CT, and opined that the Plaintiff was "completely and totally disabled." (T. at 262-263). Dr. Cappuccino saw the Plaintiff again on June 21, 2003, and reported that the CT showed the interbody device in good position without evidence of compression. (T. at 310). He also reported that the Plaintiff's back discomfort had improved. Id. Dr. Cimato saw Plaintiff on June 20, 2003 and reported that he did not have back pain, but his legs were weak gave out frequently. (T. at 296). On August 5 2003, Plaintiff returned to Dr. Cappuccino who found "no evidence of focal motor weakness or sensory dysesthesias" and recommended continued physical therapy. (T. at 255).

On October 22, 2003, Dr. Cappuccino completed a Medical Source Statement of Ability to do Work-Related Activities indicating that the Plaintiff had impairments with lifting/carrying, standing/walking, pushing/pulling, and sitting and opined that he was temporarily and totally disabled. (T. at 289-290). However, he failed to indicate the degree to which the Plaintiff was limited. He did indicate that the Plaintiff would be capable of working in the future. (T. at 276).

While the Plaintiff's condition may have worsened for a period of time prior to surgery, there is substantial evidence in the record for the ALJ to have concluded that post-surgery, his condition was improving. As Plaintiff admits that the medical evidence prior to October 1, 2002 does not prove disability, the ALJ's determination that he was not disabled for a period of at least 12 months neither before or after October 1, 2002 was not erroneous because the objective medical evidence supports the conclusion that the Plaintiff's condition improved following surgery. (See T. at 255, 276, 296, 262-63, 310). Although the Plaintiff may continue to experience pain, the determination that his impairments are not severe enough to warrant a finding of disability is supported by the medical evidence in the record.

> **B.  The ALJ's Properly Concluded that the Plaintiff had the Residual Functional Capacity to Perform Sedentary Work**.

The ALJ concluded that the Plaintiff had the ability to perform a full range of sedentary work without repetitive stooping or twisting at the waste. (T. at 20, 22). Sedentary work involves lifting no more than ten pounds and involves limited walking or standing. (T. at 22). 20 C.F.R. §404.1567 (a). The ALJ reached this conclusion from a review of all of the relevant medical evidence, discussed above, and her evaluation of the Plaintiff's subjective complaints. (T. at 19-20). She concluded that "the Plaintiff's allegations of pain and functional limitations [were] not fully credible," a determination within her discretion. (T. at 20); Ponte v. Secretary, Dep't Health and Human Services, 728 F.2d 588, 591

(2d Cir. 1984) (quoting Carroll v. Secretary of Health and Human Services, 705 F.2d 638, 642 (2d Cir. 1983)); (Commissioner's reply brief at 5-6). The ALJ also considered the opinion of Dr. Cappuccino that the Plaintiff was temporarily and totally disabled, however an opinion on the ultimate issue of disability is left to the Commissioner, and where there is not substantial medical evidence for a finding of disability, the ALJ's determination is not erroneous. (T. at 18); 20 C.F.R. §404.1527(e) (3); Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999).

The ALJ concluded that considering the Plaintiff's age, 35, education, high school, and relevant work history, he was capable of performing sedentary work and was not disabled. (T. at 23). Based on a review of the entire record, this court finds that the ALJ's residual functional capacity determination for the entire period at issue, was supported by the medical evidence in the record.

## CONCLUSION

For the reasons set forth above, I grant Commissioner's motion for judgment on the pleadings. Plaintiff's motion for judgment on the pleadings is denied, and Plaintiff's complaint is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

Dated:  Rochester, New York
        October 8, 2008